1
2
3
4
5
6
7            IN THE UNITED STATES DISTRICT COURT

8               FOR THE DISTRICT OF ARIZONA

9

10  Lance C. Dahlstrom,                    )     No.  CIV 10-192-TUC-DCB (JCG)
                                           )
11              Plaintiff,                 )
                                           )     **REPORT & RECOMMENDATION**
12  vs.                                    )
                                           )
13  Michael J. Astrue,                     )
                                           )
14              Defendant.                 )
    _____    )

15

16        The plaintiff filed this action for review of the final decision of the

17  Commissioner for Social Security pursuant to 42 U.S.C. §§ 405(g).  The case has

18  been referred to the United States Magistrate Judge pursuant to the Rules of Practice

19  of this Court.

20        Pending before the court is an opening brief filed by Plaintiff on August 30,

21  2010 (Doc. No. 12), a response brief filed by Defendant on October 16, 2010 (Doc.

22  No. 16) and a reply filed by Plaintiff on November 19, 2010.  (Doc. 19.)

23        The Magistrate Judge recommends that the District Court, after its independent

24  review, deny the relief requested by Plaintiff.

25                        **<u>BACKGROUND</u>**

26  **1.     Procedural History**

27        On June 19, 2007, Plaintiff filed an application for disability insurance

28  benefits, alleging a disability that began on April 1, 2007. (AR 12.)  The claim was

1   denied initially on October 4, 2007, and upon reconsideration on March 3, 2008.

2   Thereafter, the claimant filed a written request for hearing on April 26, 2008. (*Id*.)

3   The claimant appeared, represented by counsel, and testified at a hearing on March

4   27, 2009. (*Id*.) On June 25, 2009, Administrative Law Judge Milan M. Dostal issued

5   a decision denying Plaintiff's application for benefits. (AR 12-19.)  Plaintiff timely

6   requested review of the ALJ's decision (AR 95); the request was denied on February

7   4, 2010. (AR 1.)

8          On April 5, 2010, Plaintiff filed a complaint in U.S. District Court, appealing

9   the Commissioner's final decision denying his application pursuant to 20 C.F.R. §§

10  404.981, 416.1481. (Doc. No. 1.)

11  **2.      Plaintiff's Work History**

12         Plaintiff was born on September 3, 1971. (AR 107.)  He finished tenth grade

13  and obtained a GED. (AR 24.)  His work experience includes working in construction

14  and basic labor and working as a valet and a cable technician. (AR 24-28.)

15  **3.      Plaintiff's Medical History**

16         In April, 2007, Plaintiff presented to the emergency room with complaints of

17  headaches, chest pain and abdominal pain.  Plaintiff stated that he used cocaine and

18  heroin intravenously, and had used as recently as the prior day. (AR 246.) Plaintiff

19  was found to have bacterial endocarditis (inflamation of the heart valves) and

20  abscesses in his brain. (AR 195, 197, 201, 257-258.) Plaintiff's endocarditis required

21  that Plaintiff's left heart valves be replaced. (AR 257-58.)  Plaintiff spent two-and-a-

22  half months in the hospital. (AR 34.)  Plaintiff received an artificial heart valve

23  replacement in open heart surgery in May, 2007. (AR 195-96; 258.)

24         On May 31, 2007, an echocardiogram showed that the left ventricular function

25  of Plaintiff's heart was markedly impaired with an ejection fraction estimated at less

26  than 20%. (AR 203.)

27

28                                          -2-

1    On June 1, 2007, a chest x-ray showed satisfactory improvement post open-

2    heart surgery.  (AR 199.)   The radiologist noted that the overall appearance of

3    Plaintiff's chest had improved from one day earlier.  (*Id.*)

4    A June 7, 2007 CT scan of Plaintiff's head revealed that Plaintiff's brain

5    abscesses had decreased in size and no new abnormalities were present.  (AR 197.)

6    A June 11, 2007 echocardiogram and doppler study showed that Plaintiff's

7    artificial valve was functioning normally. (AR 202.)   The left ventricular function of

8    Plaintiff's heart remained impaired with an ejection fraction estimated at 30%.  (*Id.*)

9    On October 2, 2007, state-agency physician Dr. Hassman examined Plaintiff.

10   (AR 217.)   She observed that Plaintiff was short of breath and heard a loud

11   holosystolic murmur when examining Plaintiff's heart.  (AR 219.)   Mild activity

12   caused Plaintiff to be short of breath during the examination.  (AR 220.) Dr. Hassman

13   diagnosed Plaintiff with a history of endocarditis, history of brain abscesses and

14   cardiac insufficiency. (*Id.*)  Dr. Hassman opined that Plaintiff could lift or carry 10

15   pounds occasionally and lift or carry less than 10 pounds frequently.  (AR 221.)  She

16   opined that Plaintiff could sit or stand 6-8 hours in an 8-hour day.  (AR 222.)  Dr.

17   Hassman further stated that Plaintiff had no limitations in sitting, could occasionally

18   climb stairs/stoop/kneel/crouch/crawl, could never climb ladders, and had no

19   limitations in reaching/handling/fingering/feeling.  (AR 223.)

20   On October 4, 2007, consulting state-agency physician Dr. Fahlberg reviewed

21   Plaintiff's medical information and opined that Plaintiff could occasionally/frequently

22   lift/carry 10 pounds, stand/walk at least two hours in an 8-hour work day, sit about 6

23   hours in an 8-hour work day, could push/pull, could occasionally climb stairs or

24   ladders, could frequently balance/stoop/kneel/crouch/crawl, had no manipulative,

25   visual or communicative limitations and should avoid exposure to fumes and hazards.

26   (AR 228-234.)

27

28

On October 22, 2007, Plaintiff was treated by Dr. Gonzalez. (AR 242-43.) He reported no cardiovascular symptoms, no chest pain or discomfort and no pulmonary symptoms. (AR 242.) Dr. Gonzalez did not observe any gastrointestinal symptoms. (243.)

On December 12, 2007, Plaintiff was treated by Dr. Gonzalez. (AR 240-241.) He reported no cardiovascular or pulmonary symptoms. (*Id*.) Dr. Gonzalez noted that Plaintiff's chronic pain syndrome was adequately controlled with medications. (AR 241.) Plaintiff reported no gastrointestinal symptoms. (*Id*.)

On February 12, 2008, Plaintiff was treated by Dr. Gonzalez. (AR 272-74.) He denied chest pain or palpitations. (AR 272.) He reported no pulmonary symptoms. (AR 273.) Dr. Gonzalez opined that Plaintiff's cardiomyopathy was stable and controlled with current treatment regimen. (AR 274.) Plaintiff reported no gastrointestinal symptoms. (AR 273.)

On February 28, 2008, state agency physician Dr. Maximov reviewed Plaintiff's medical records and Dr. Fahlberg's assessment. (AR 244-45.) Dr. Maximov agreed with Dr. Fahlberg's opinion regarding Plaintiff's limitations. (AR 245.) Dr. Maximov found that Plaintiff was expected to recover sufficiently by April, 2008 that he could at least perform work at the sedentary level. (*Id*.)

Cardiologist Lionel Faitelson saw Plaintiff on February 29, 2008 for follow-up to assess his status post heart surgery. (AR 258.) Plaintiff's left ventricular ejection function was normal at 55-60%. (AR 260.) Dr. Faitelson observed moderate stenosis in the prosthetic aortic valve and possible mild stenosis in the prosthetic tricuspid valve, and trace regurgitation (backward flow of blood) in several arteries. (AR 260.) Dr. Faitelson noted an absence of congestive heart failure. (AR 258.)

On July 16, 2008, Dr. Gonzalez examined Plaintiff and noted that his lungs and respiratory movements were normal. (AR 271.) Dr. Gonzalez also noted that

1   Plaintiff's heart rate and rhythm were normal. (AR 271.) Dr. Gonzalez reported that
2   Plaintiff's chronic pain syndrome was stable and controlled. (*Id*.)

3         On October 29, 2008, Dr. Etehad examined Plaintiff and opined that because
4   of his brain abscess and heart valve replacement, Plaintiff suffered from shortness of
5   breath, blurred vision and chest pain. (AR 255.) Dr. Etehad stated that Plaintiff
6   should not return to work. (*Id*.)

7         Dr. Faitelson treated Plaintiff on January 29, 2009. (AR 257.) Dr. Faitelson
8   performed an ECG which showed a sinus rhythm with right bundle branch block and
9   left anterior fascicular block. (*Id*.) Plaintiff reported some shortness of breath. (*Id*.)
10  Dr. Faitelson noted an absence of congestive heart failure. (*Id*.)

11        On February 17, 2009, Plaintiff was treated by Dr. Gonzalez. (AR 267-69.)
12  His blood pressure was 150 over 92. (*Id*.) Dr. Gonzalez observed that Plaintiff had
13  a syringe plunger stuck in his right ear, blurry vision, cardiomyopathy and chronic
14  pain syndrome. (*Id*.) He referred Plaintiff to an ENT for extraction of the syringe
15  plunger, referred Plaintiff to a neurologist for his blurred vision and refilled a percocet
16  prescription for chronic pain. (*Id*.)

17        On February 17, 2009, Plaintiff reported to Dr. Eckstein that he had suffered
18  from blurry vision since May, 2007, but that he had seen a ophthalmologist, who
19  reported that his eyes were okay. (AR 268.) Plaintiff reported that his chronic pain
20  had increased since ceasing methadone six days prior. (*Id*.)

21        On March 10, 2009, Dr. Staci Schonbrun, a labor market consultant, evaluated
22  Plaintiff. (AR 178-79.) Dr. Schonbrun administered the Nelson Denny Reading Test
23  and the Wide Range Achievement Test-3 to Plaintiff and reported that Plaintiff's
24  vocabulary score was at the 9.8 grade equivalency, his reading comprehension was
25  at the 5.1 grade equivalency, his mathematical skills were at 9.2 grade equivalency
26  and his spelling skills were at the 10.5 grade equivalency. (AR 178.)

27

28

1    On March 26, 2009, Dr. Faitelson reported that Plaintiff required ongoing
2  treatment for congestive heart failure and history of hypertension. (AR 277.) Dr.
3  Faitelson opined that Plaintiff had limited functional capability. (*Id.*)

4    On May 4, 2009, an MRI scan revealed prior multiple brain abscesses and
5  occipital hematoma to Plaintiff's brain. (AR 284.) There was no evidence of active
6  abscess. The radiologist observed some scarring, but noted that the scarring was
7  stable and represented old infarction or abscess cavity.

8    On September 22, 2009, Plaintiff was treated by Dr. Kerendian, an eye
9  physician. Dr. Kerendian diagnosed Plaintiff with inferior quadrant opia consistent
10  with occipital abscess. (AR 287.)

11  **4.    Plaintiff's Testimony**

12    Plaintiff described his physical limitations as follows: he can stand for
13  approximately 15 minutes before he needs to sit down; sit for approximately 45
14  minutes before he needs to stand; and gets short of breath after walking half a block.
15  He testified that he lives with his girlfriend and tries to help out around their trailer
16  by feeding the cats and taking care of himself. He stated that he had not used drugs
17  or alcohol in two years. He takes three prescription medications. He testified that as
18  a result of an ongoing brain abscess, his vision blurs and he gets bad headaches. He
19  further testified that, as a result of his heart surgery, he gets short of breath, his heart
20  races and he needs to lie down. He also described episodes of dizziness and fainting
21  occurring once or twice a week. Plaintiff testified that he had gastrointestinal
22  problems which were debilitating and which occurred as seldom as once every two
23  weeks or as often as three times a week. (AR 23-39.)

24  **5.    Vocational Expert Testimony**

25    Vocational Expert Ruth Van Fleet testified before the ALJ. (AR 39.) Ms. Van
26  Fleet testified that Plaintiff had previously worked in very heavy, semi-skilled work,
27  such as carpentry, cable line burial, drywall and roofing, and light, unskilled work

28    -6-

1   such as hospital valet and parking lot attendant.  Ms. Van Fleet testified that Plaintiff

2   could not perform past relevant work but could perform a sedentary, unskilled

3   production assembler job.  Ms. Van Fleet testified that 1,071,239 such jobs were

4   available nationally, and 647 such jobs were available in Arizona.  (AR 39-50.)

5                                              **CLAIM EVALUATION**

6          Social Security Administration (SSA) regulations require that disability claims

7   be evaluated pursuant to a five-step sequential process.  20 C.F.R. §§ 404.1520,

8   416.920; *Baxter v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir. 1991).  The first step

9   requires a determination of whether the claimant is engaged in substantial gainful

10  activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the claimant is not

11  disabled and benefits are denied.  *Id.*  If the claimant is not engaged in substantial

12  gainful activity, the ALJ proceeds to step two which requires a determination of

13  whether the claimant has a medically severe "impairment or combination of

14  impairments."  20 C.F.R. §§ 404.1520(c), 416.920(c).

15         In making a determination at step two, the ALJ uses medical evidence to

16  consider whether the claimant's impairment more than minimally limits or restricts

17  his or her "physical or mental ability to do basic work activities."  *Id*.  If the ALJ

18  concludes the impairment is not severe, the claim is denied.  *Id.*  Upon a finding of

19  severity, the ALJ proceeds to step three which requires a determination of whether the

20  impairment meets or equals one of several listed impairments that the Commissioner

21  acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§

22  404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If the claimant's

23  impairment meets or equals one of the listed impairments, then the claimant is

24  presumed to be disabled, and no further inquiry is necessary.  *Ramirez v. Shalala,* 8

25  F.3d 1449, 1452 (9th Cir. 1993) (citations omitted).  If the claimant's impairment does

26  not meet or equal a listed impairment, evaluation proceeds to the next step.

27

28                                              -7-

1        The fourth step requires the ALJ to consider whether the claimant has

2    sufficient RFC[1] to perform past work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If the

3    ALJ concludes the claimant has sufficient RFC, then the claim is denied.   20 C.F.R.

4    §§ 404.1520(f), 416.920(f).   If the claimant cannot perform any past work due to a

5    severe impairment, then the ALJ must move to the fifth step which requires

6    consideration of the claimant's RFC to perform other substantial gainful work in the

7    national economy in view of claimant's age, education, and work experience.  20

8    C.F.R. §§ 404.1520(g), 416.920(g).

9    **THE ALJ'S FINDINGS**

10       The ALJ analyzed Plaintiff's claim of disability according to the five-step

11   procedure.  At step one of the analysis, the ALJ found that Plaintiff had not engaged

12   in substantial gainful activity since June 19, 2007.  (AR 14.)  At step two of the

13   analysis, the ALJ concluded that Plaintiff suffered from the following severe

14   impairments: endocarditis with valve replacement, cardiomyopathy and brain abscess.

15   (*Id*.)  At step three, the ALJ determined that Plaintiff's impairments did not meet or

16   equal one of the impairments listed in the Social Security regulations.  (*Id*.)   At step

17   four, the ALJ concluded that, on or before his date last insured, Plaintiff had RFC to

18   perform a range of sedentary work.  (AR 15.)  The ALJ concluded that Plaintiff's

19   medically determinable impairments could reasonably be expected to cause some of

20   his alleged symptoms, but that Plaintiff's statements concerning the intensity,

21   persistence and limiting effects of these symptoms were not credible.  (*Id*.)  The ALJ

22   gave little weight to the opinion of Dr. Etehad.  (AR 16.)   At step five, the ALJ

23   concluded that Plaintiff was unable to perform past relevant work but that Plaintiff

24   had sufficient RFC to perform other substantial gainful work in the national economy

25

26   ───────────────

27      [1]  Residual functional capacity is defined as that which an individual can still do despite her limitations.  20 C.F.R. § 404.1545.

28   -8-

1 in view of claimant's age, education, and work experience, specifically unskilled
2 work as a production assembler.

3 **STANDARD OF REVIEW**

4       An individual is entitled to SSI disability benefits if he or she demonstrates,
5 through medically acceptable clinical or laboratory standards, an inability to engage
6 in substantial gainful activity due to a physical or mental impairment that can be
7 expected to last for a continuous period of at least twelve months.  42 U.S.C. §
8 1382c(a)(3)(A).  "A claimant will be found disabled only if the impairment is so
9 severe that, considering age, education, and work experience, that person cannot
10 engage in any other kind of substantial gainful work which exists in the national
11 economy."  *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (quoting *Marcia v.*
12 *Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

13       To establish a *prima facie* case of disability, the claimant must demonstrate an
14 inability to perform his or her former work.  *Gallant v. Heckler*, 753 F.2d 1450, 1452
15 (9th Cir. 1984) (citing *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir.1984)).
16 Once the claimant meets that burden, the Commissioner must come forward with
17 substantial evidence establishing the claimant is not disabled.  *Fife v. Heckler*, 767
18 F.2d 1427, 1429 (9th Cir. 1985).

19       The findings of the Commissioner are meant to be conclusive.  42 U.S.C. §§
20 405(g), 1383(c)(3).  The court may overturn the decision to deny benefits "only if it
21 is not supported by substantial evidence or it is based on legal error."  *Matney v.*
22 *Sullivan,* 981 F.2d 1016, 1019 (9th Cir. 1992) (citation omitted).  The Commissioner's
23 determination that a claimant is not disabled must be upheld if the Commissioner
24 applied the proper legal standards and the record as a whole contains substantial
25 evidence to support the decision.  *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990)
26 (citations omitted).  Substantial evidence is defined as "such relevant evidence as a
27 reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

28

1    *Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen,* 853 F.2d 643,

2    644 (9th Cir. 1987).  The standard is "less than a preponderance" of the evidence

3    standard.  *See Matney,* 981 F.2d at 1019.

4         "[I]f the evidence can support either outcome, the court may not substitute its

5    judgment for that of the ALJ."  *Matney,* 981 F.2d at 1019.  When applying the

6    substantial evidence standard, however, the court should not mechanically accept the

7    Commissioner's findings but should review the record critically and thoroughly.  *Day*

8    *v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).  Reviewing courts must consider

9    the evidence that supports as well as detracts from the Commissioner's conclusion.

10   *Id.*  A denial of benefits will be set aside if the Commissioner fails to apply proper

11   legal standards in weighing the evidence even though the findings may be supported

12   by substantial evidence.     *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002);

13   *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

14        In evaluating evidence to determine whether a claimant is disabled, the opinion

15   of a treating physician[2] is entitled to great weight.  *Ramirez v. Shalala,* 8 F.3d 1449,

16   1453-54 (9th Cir. 1993) (citations omitted).  The Commissioner may reject a treating

17   physician's uncontradicted opinion only if he sets forth clear and convincing reasons

18   for doing so.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (citing  *Baxter v.*

19   *Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991));  *Magallanes v. Bowen,* 881 F.2d 747,

20   751 (9th Cir. 1989).  If the treating physician's opinion is contradicted by another

21   doctor, the Commissioner may reject that opinion only if he provides specific and

22   legitimate reasons supported by substantial evidence in the record.  *Lester,* 81 F.3d

23   at 830 (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983)).  No distinction

24   is drawn "between a medical opinion as to a physical condition and a medical opinion

25

26   _____

27        [2] The term "physician" includes psychologists and other health professionals who are
     not medical doctors.  *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1995).

28                                        -10-

1    on the ultimate issue of disability." *Rodriguez v. Bowen*, 876  F.2d 759, 761 n.7 (9th

2    Cir. 1989).

3            When medical reports are inconclusive, questions of credibility and resolution

4    of conflicts in the testimony are functions solely of the Commissioner. *Magallanes,*

5    881 F.2d at 751 (citations omitted).  The Commissioner's finding that a claimant is

6    less than credible, however, must have some support in the record. *See Light v. Soc.*

7    *Sec. Admin.,* 119 F.3d 789, 792-93 (9th Cir. 1997).

8                                    **DISCUSSION**

9            Plaintiff challenges the ALJ's decision on four grounds: (1) the ALJ erred in

10    giving little weight to the opinion of Dr. Etehad; (2) the ALJ failed to meet his burden

11    to show that other work exists in significant numbers in the national economy that

12    Plaintiff can perform; (3) the ALJ failed to provide clear, convincing reasons for

13    rejecting Plaintiff's testimony; and (4) new evidence provided to the Appeals Council

14    warrants reversal or remand.

15    **1.      The ALJ did not err in giving little weight to the opinion of Dr. Etehad**

16            The ALJ concluded that Plaintiff had residual functional capacity to perform

17    a range of sedentary work.  In so concluding, the ALJ gave "very little weight" to the

18    opinion of Dr. Etehad. Plaintiff contends that Dr. Etehad's opinion was improperly

19    discounted. As a threshold matter, the Magistrate Judge agrees with the government's

20    assertion that Dr. Etehad was not a "treating physician" within the meaning of 20 CFR

21    § 416.927(d)(2).  That regulation notes that the opinions of treating physicians are

22    given more weight because treating physicians are the "medical professionals most

23    able to provide a detailed, longitudinal picture of your medical impairment(s)" and

24    who "may bring a unique perspective to the medical evidence that cannot be obtained

25    from the objective medical findings alone or from reports of individual examinations,

26    such as consultative examinations or brief hospitalizations."  In Plaintiff's case, Dr.

27    Etehad examined Plaintiff once.  His notes from the examination are illegible.  (AR

28                                       -11-

256.)  He did not have an on-going treatment relationship with Plaintiff and was not able to provide a longitudinal picture of Plaintiff's medical impairments.[3]  Rather, Dr. Etehad's examination was an "individual examination," which 20 CFR § 416.927(d)(2) expressly distinguishes from a treating physician examination.

Even if it were assumed that Dr. Etehad was a treating physician, the ALJ provided specific and legitimate reasons for rejecting Dr. Etehad's opinion, and those reasons are supported by substantial evidence in the record.  *Lester*, 81 F.3d at 830 (citing *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).  The ALJ noted that "although it appears he examined claimant, [Dr. Etehad's] opinion is not consistent with other medical records from the same time period."  Dr. Etehad reported that Plaintiff "has been experiencing extreme shortness of breath and well as blurred vision and chest pain."  The medical records closest in time to Dr. Etehad's examination are the July 16, 2008, examination by Dr. Gonzalez and the January 29, 2009 examination by Dr. Faitelson.  Dr. Gonzalez noted that Plaintiff's heart rate and rhythm were normal and his chronic pain syndrome was stable and controlled.  Plaintiff reported "some" shortness of breath to Dr. Faitelson, but Dr. Faitelson noted an absence of congestive heart failure.

The ALJ also noted that Dr. Etehad's opinion is not supported by any diagnostic evidence or medical findings.  This finding was supported by substantial evidence (or lack thereof): Dr. Etehad's notes of his examination are illegible and there is nothing in the record to suggest that Dr. Etehad was familiar with Plaintiff's medical history, reviewed his medical records or that his opinion was informed by any

---

[3] To the contrary, it appears that much of Dr. Etehad's opinion was based on Plaintiff's own reports of symptoms.  In addition, Dr. Etehad incorrectly stated that Plaintiff had suffered a trauma in May, 2007 which caused him to suffer a brain abscess and heart damage.  The medical records demonstrate that Plaintiff's brain and heart conditions were caused by drug use and were first discovered in April, 2007.

diagnostic evidence.  Accordingly, the Magistrate Judge concludes that the ALJ did not err in affording little weight to the opinion of Dr. Etehad.

**2.    The ALJ did not err in concluding that other work exists in significant numbers in the national economy that Plaintiff can perform**

The ALJ relied on the testimony of the vocational expert in concluding that Plaintiff had residual functional capacity to work as a production assembler. (AR 18.) Plaintiff contends that the ALJ erred in relying on the vocational expert because the ALJ did not ask the vocational expert whether her testimony conflicted with the Dictionary of Occupational Titles ("DOT") as required by Social Security Rule 00-4p.

Social Security Ruling 004-p provides:

> When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

In the present case, it is plain from the record, and the government concedes, that the ALJ did not inquire on the record whether the vocational expert's testimony was consistent with the DOT.  However, an "ALJ's failure to explicitly inquire about potential conflicts between the DOT and [vocational expert's] testimony, as mandated by SSR 00-04p, constitute[s] at most harmless error [if] there was no conflict that required resolution." *Barrios v. Astrue*, 2010 WL 3825684, *8 (E.D. Cal. 2010).  In the present case, Plaintiff contends that the vocational expert's testimony conflicted with the DOT with respect to exertional level.  The vocational expert testified that, assuming Plaintiff's exertion level was sedentary and Plaintiff could only occasionally lift ten pounds and frequently lift less than ten pounds, Plaintiff could perform the work of an unskilled production assembler.  Plaintiff contends that "every production

1   assembler in the DOT is characterized as either light or medium exertional level."

2   (Doc. 19, pg. 6.)  In support of that assertion, Plaintiff cites to three provisions of the

3   DOT, none of which specify an exertional level.  *See, e.g.*, DOT 729.687-010,

4   available   at   http://www.occupationalinfo.org/72/729687010.html   (describing

5   electrical accessories assembler as one who "fits together parts, such as socket bases,

6   shafts,  contact  fingers,  and  springs,  in  specified  sequence,  using  fixtures,

7   screwdrivers,  and  air  nut  runners.  Tests  actions  of  moving  parts  and  listens  for

8   unusual sounds to detect defective parts or faulty operation. Verifies completed

9   assembly against pictorial drawings.") Nor does DOT Code 93956, "Assemblers and

10  Fabricators- Except Machine, Electrical, Electronic, and Precision," which defines the

11  role of "assembler" and outlines the skills and abilities necessary to perform assembly

12  line jobs,  mandate  an  exertional  level.   *See* DOT  Code  93956,  available  at

13  http://www.occupationalinfo.org/onet/93956.html.  Accordingly, Plaintiff has failed

14  to demonstrate a conflict between the testimony of the vocational expert and the

15  DOT.[4]

16      Plaintiff also contends that the vocational expert's testimony that 1,071,239

17  production assembler jobs existed nationally and 647 existed in Arizona was not

18  sufficient evidence from which the ALJ could conclude that substantial gainful work

19  existed in the national economy.  An individual is determined to be under a disability

20  "only if his physical or mental impairment or impairments are of such severity that

21  he is not only unable to do his previous work but cannot, considering his age,

22

23

_____

24      [4] In addition, the Magistrate Judge notes that the ALJ specifically stated that "the vocational expert's testimony is consistent with the information contained in the DOT." (AR

25  18.)  In *Barrio*, the court found this statement to be a clear demonstration that "while the ALJ was cognizant of his obligation to resolve potential conflicts, no conflict, whether

26  apparent, inherent, or potential, was present. Thus, there was no reason for the ALJ to inquire about conflicts because neither he, the VE, nor Plaintiff's counsel perceived any

27  conflict." 2010 WL 3825684 at fn.5.

28                                  -14-

1    education, and work experience, engage in any other kind of substantial gainful work

2    which exists in the national economy, regardless of whether such work exists in the

3    immediate area in which he lives." 42 U.S.C. § 423(d)(2)(A).  Work which "exists

4    in the national economy" means work which "exists in significant numbers either in

5    the region where such individual lives *or* in several regions of the country." *Id.*

6    (emphasis added).  Plaintiff contends that the ALJ's finding failed to comply with 42

7    U.S.C. § 423(d)(2)(A) because there is no evidence that assembler jobs exist in the

8    region where Plaintiff lives, as opposed to Arizona as a whole, and because it is

9    unclear from the ALJ's findings whether the one million assembler jobs available

10   nationally are located in "several regions" of the country.  Plaintiff's assertion that the

11   ALJ cannot consider Arizona as "the region where Plaintiff lives" is without merit,

12   as Plaintiff's argument is supported solely by citation to a decision that is unpublished

13   and does not support Plaintiff's argument.  Moreover, Plaintiff does not cite any case

14   law in support of her claim that the ALJ must specifically find that the over one

15   million jobs available nationally are not clustered within one region of the nation but

16   are spread out across several regions.  The Magistrate Judge notes that a finding of

17   "1.34 million ... jobs available in the national economy and 385 in the [state]

18   economy" has been found sufficient within the meaning of 42 U.S.C. § 423(d)(2)(A).

19   *See Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).  Accordingly, the

20   Magistrate Judge concludes that the ALJ did not err in concluding that work exists in

21   significant numbers in the national economy that Plaintiff can perform.

22   **3.     The ALJ provide clear, convincing reasons for rejecting Plaintiff's
           testimony**

23

24        A claimant who alleges disability based on subjective symptoms "must

25   produce objective medical evidence of an [underlying] impairment or impairments"

26   and "show that the impairment or combination of impairments could reasonably be

27   expected to (not that it did in fact) produce some degree of symptom." *Smolen v.*

28                                          -15-

1 | *Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (citations omitted).  "The claimant need
2 | not produce objective medical evidence of the pain or fatigue itself, or the severity
3 | thereof."  *Id.*.  "Nor must the claimant produce objective medical evidence of the
4 | causal relationship between the medically determinable impairment and the
5 | symptom."  *Id.*  "Finally, the claimant need not show that her impairment could
6 | reasonably be expected to cause the *severity* of the symptom she has alleged; she need
7 | only show that it could reasonably have caused *some* degree of symptom."  *Id.*
8 | (emphasis added).  This approach to the evaluation of a claimant's testimony "reflects
9 | the highly subjective and idiosyncratic nature of pain and other such symptoms."  *Id.*

10 | Once a claimant produces medical evidence of an underlying impairment that
11 | is reasonably likely to be the cause of some pain, the ALJ "may not discredit a
12 | claimant's testimony of pain and deny disability benefits solely because the degree of
13 | pain alleged by the claimant is not supported by objective medical evidence." *Bunnell*
14 | *v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991). Although an ALJ "cannot be
15 | required to believe every allegation of disabling pain," *Fair v. Bowen*, 885 F.2d 597,
16 | 603 (9th Cir. 1989), the ALJ cannot reject testimony of pain without making findings
17 | sufficiently specific to permit the reviewing court to conclude that the ALJ did not
18 | arbitrarily discredit the claimant's testimony,  *Bunnell*, 947 F.2d at 345-46 (citing
19 | *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (9th Cir. 1991)). There are a number of
20 | factors the ALJ must consider to determine the credibility of the claimant's allegations
21 | of disabling pain. These factors are: (1) the nature, location, onset, duration,
22 | frequency, radiation, and intensity of any pain; (2) precipitating and aggravating
23 | factors (*e.g.*, movement, activity, environmental conditions); (3) type, dosage,
24 | effectiveness, and adverse side-effects of any pain medication; (4) treatment, other
25 | than medication, for relief of pain; (5) functional restrictions; and (6) the claimant's
26 | daily activities.  *Id.* at 346 (citing SSR 88-13).   The ALJ may also consider: (1)
27 | ordinary techniques of credibility evaluation, such as the claimant's reputation for

28

-16-

1   lying, prior inconsistent statements concerning the symptoms, and other testimony by

2   the claimant that appears less than candid; (2) unexplained or inadequately explained

3   failure to seek treatment or to follow a prescribed course of treatment; and (3) the

4   claimant's daily activities.  *Smolen*, 80 F.3d at 1284.  If "there is no affirmative

5   evidence suggesting [the claimant] is malingering, the ALJ may reject the claimant's

6   testimony regarding the severity of her symptoms only if he makes specific findings

7   stating clear and convincing reasons for doing so."  *Id*. at 1283-84.

8        In the present case, the ALJ provided clear and convincing reasons for

9   rejecting Plaintiff's testimony regarding his symptoms.  First, the ALJ observed that

10  Plaintiff's heart condition had improved; within a few weeks of his open heart surgery

11  his ejection fraction had increased from 20% to 30%.[5]  (AR 16.)  An ALJ may

12  discount claimant's credibility on the basis of medical improvement.  *See Morgan v.*

13  *Commissioner of Social Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999).

14       Second, the ALJ found that Plaintiff's heart condition symptoms were

15  controlled by medication.  Dr. Gonzalez noted on February 12, 2008 that Plaintiff's

16  cardiomyopathy was stable and controlled by his current treatment regimen.  (AR

17  274.)   Impairments that can be controlled effectively with medication are not

18  disabling for the purpose of determining eligibility for SSI benefits. *Warre v.*

19  *Commissioner of Social Sec. Admin*., 439 F.3d 1001, 1006 (9th Cir. 2006).

20       Third, the ALJ noted that inconsistencies between Plaintiff's testimony and

21  statements made by Plaintiff to treating physicians.  Although Plaintiff testified that

22  he experienced pain in his chest, head and all over his body (AR 29), on three separate

23  occasions Plaintiff reported to Dr. Gonzalez that his chronic pain was adequately

24  controlled by medication.  (AR 241, 242, 270.)  Plaintiff testified that he suffered

25

26

27  [5] The Magistrate Judge notes that by February, 2008, Plaintiff's ejection fraction was normal at 55-60%.  (AR 260.)

28                                  -17-

1   from anxiety (AR 36) but there was no evidence in the record that Plaintiff had

2   reported anxiety to any of his physicians; to the contrary Dr. Gonzalez observed that

3   Plaintiff was not anxious.  (AR 273.)  In addition, Plaintiff's testimony regarding

4   episodes of gastrointestinal distress were not supported by the record; during his

5   October, 2007, December 2007 and February 2008 visits to Dr. Gonzalez, Plaintiff

6   reported that he did not have any gastrointestinal symptoms and there is no medical

7   evidence of any gastrointestinal issues like the ones Plaintiff described during the

8   hearing.  Contradiction with the medical record is a sufficient basis for rejecting the

9   claimant's subjective testimony. *See Carmickle v. Commissioner, Social Sec. Admin.*,

10  533 F.3d 1155, 1161 (9th Cir. 2008).

11      Plaintiff contends that the ALJ failed to articulate an adequate reason for

12  rejecting Plaintiff's testimony that he suffered from blurry vision and inability to

13  focus his gaze.  However, this testimony was contradicted by Dr. Schonbrun's

14  observations during her March 10, 2009 evaluation of Plaintiff.  Dr. Schonbrun noted

15  that Plaintiff paused frequently to rub his eyes, but Plaintiff nevertheless completed

16  the tests administered by Dr. Schonbrun and scored reasonably well on reading,

17  spelling and mathematics tests.  (AR 178.)  In addition, the ALJ noted that Plaintiff's

18  reports of blurred vision could not be attributed to Plaintiff's brain abscess based on

19  the evidence in the record.  (AR 17.)

20      Accordingly, the Magistrate Judge concludes that the ALJ provided clear and

21  convincing reasons for rejecting Plaintiff's testimony regarding the severity of his

22  symptoms.

23  **4.      The evidence provided to the Appeals Council does not warrant reversal**
        **or remand**

24

25      Plaintiff contends that evidence obtained after the ALJ issued his decision,

26  specifically the May, 2009 MRI and September 2009 report of Dr. Kerendian,

27  provides grounds for reversal of the ALJ's decision, or, in the alternative, grounds for

28

remand.  The parties both contend that whether this additional evidence is grounds for remand is governed by 42 U.S.C. § 405(g), which states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."  However, case law suggests that § 405(g) does not apply when the additional evidence has already been presented to and considered by the Appeals Council.  *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1030 n. 2 (9th Cir. 2007) (considering on appeal both the ALJ's decision and the additional material submitted to the Appeals Council); *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000) (recognizing that "[w]e properly may consider the additional materials because the Appeals Council addressed them in the context of denying Appellant's request for review" and remanding for further proceedings); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993) ("we consider on appeal both the ALJ's decision and the additional material submitted to the Appeals Council.").

        In the present case, the Appeals Council acknowledged receipt of Plaintiff's additional evidence in denying Plaintiff's request for review.  (AR 1, 4.)  Thus, it is part of the record and can be considered in evaluating the merits of the ALJ's decision.  For two reasons,  the Court should decline to consider Plaintiff's argument that evidence submitted to the Appeals Council is grounds for reversal or remand. First, reversal is never the proper remedy. As stated in *Harman v.  Apfel*, 211 F.3d at 1180:

> While we properly may consider the additional evidence presented to the Appeals Council in determining whether the Commissioner's denial of benefits is supported by substantial evidence, it is another matter to hold on the basis of evidence that the ALJ has had no opportunity to evaluate that Appellant is entitled to benefits as a matter of law. The appropriate remedy in this situation is to remand this case to the ALJ; the ALJ may then consider, the Commissioner then may seek to rebut and the VE may answer questions with respect to the additional evidence.

1   Thus, even if the additional evidence presented to the Appeals Council had legal

2   merit, this Court should remand to, rather than reverse, the ALJ.

3            Second, there is no basis for remand in this case because the additional

4   evidence presented to the Appeals Council does not undermine the ALJ's conclusion.

5   In denying Plaintiff's claim, the ALJ stated that "whether claimant's reports of blurred

6   vision can be attributed to his brain abscess cannot be determined from the record as

7   presented.  Similarly, the limiting effects of the vision and brain abscess issues cannot

8   be adequately assessed as there is no evidence addressing how they affect claimant's

9   ability to perform work related tasks."  (AR 17.)  The additional evidence  - the MRI

10  and notes from Dr. Kerendian – demonstrate that Plaintiff had some scarring in his

11  brain and a potential loss of vision associated with that scarring.[6]   Although this

12  additional evidence may contradict the ALJ's conclusion that Plaintiff's blurred vision

13  had no demonstrated connection to his brain abscess, it does not contain any test

14  results, medical findings or assessment related to how the vision loss would impact

15  Plaintiff's functional abilities; therefore it does not undermine the ALJ's conclusion

16  that the evidence is insufficient to adequately assess how the condition affects

17  Plaintiff's ability to perform work related tasks. Accordingly, the Magistrate Judge

18  concludes that Plaintiff has failed to demonstrate grounds for reversal or remand.

19  //

20  //

21

22

23           [6] The MRI showed "a parenchymal scar seen in the left occipital pole demarcating

24  the location of his prior hematoma" and "a second area of gliosis [which] represents old
    infarction or abscess cavity."  (AR 284.)  Gliosis is the proliferation of astrocytes (cells

25  supporting neurons and contributing to the blood-brain barrier) in the central nervous system
    after an injury to the brain. *See Taber's Cyclopedic Medical Dictionary* 189, 886 (Donald

26  Venes et al. eds. 20th ed. 2005, F.A. Davis. Co.).  Dr. Kerendian observed "inferior quadrant
    opia consistent with the occipital abscess."  (AR 287.)  Inferior quadrantopia is blindness or

27  diminished visual acuity in a lower fourth of the visual field. *See Taber's*, supra 1833-34.

28                                              -20-

**RECOMMENDATION**

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, enter an order DENYING the relief requested by Plaintiff in his opening brief.  (Doc. 12.)

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  If objections are not timely filed, the party's right to *de novo* review may be waived.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003).  If objections are filed, the parties should direct them to the District Court by using the following case number: **CV 10-192-DCB.**

The Clerk of the Court is directed to send a copy of this Report and Recommendation to all parties.

DATED this 15th day of June, 2011.

Jennifer C. Guerin
United States Magistrate Judge

-21-