# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Lance C. Dahlstrom, | ) |
| Plaintiff, | ) CV 10-192-TUC-DCB (JCG) |
| v. | ) |
| Michael J. Astrue, | ) |
| Defendant. | ) **ORDER** |

This matter was referred to Magistrate Judge Jennifer C. Guerin, pursuant to the Rules of Practice for the United States District Court, District of Arizona (Local Rules), Rule (Civil) 72.1(a). On June 15, 2011, the Magistrate Judge issued a Report and Recommendation (R&R). (Doc. 20.) She recommends denying the Plaintiff's Motion for Summary Judgment made in his Opening Brief to the Court. The Court accepts and adopts the Magistrate Judge's R&R in part and rejects it in part as the findings of fact and conclusions of law of this Court. Specifically, the Court adopts the recommendation to not consider Dr. Etehad as a treating physician and to affirm the Administrative Law Judge's (ALJ) decision to accordingly discount Dr. Etehad's opinion that Plaintiff can not work. The Court rejects the recommendation to affirm the denial of benefits, and the Court remands the case to the Commissioner for further administrative proceedings.

## STANDARD OF REVIEW

The duties of the district court in connection with a R&R by a Magistrate Judge are set forth in Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). Where the parties object to a Report and Recommendation, "[a] judge of the [district] court

shall make a *de novo* determination of those portions of the [R&R] to which objection is made." 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 149-50 (1985). When no objections are filed, the district court need not review the R&R *de novo*.

This Court's ruling is a *de novo* determination as to those portions of the R&R to which there are objections. 28 U.S.C. § 636(b)(1)(C); *Wang v. Masaitis,* 416 F.3d 992, 1000 n. 13 (9th Cir.2005); *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121-22 (9th Cir.2003) (*en banc*). To the extent that no objection has been made, arguments to the contrary have been waived. Fed. R. Civ. P. 72; *see* 28 U.S.C. § 636(b)(1) (objections are waived if they are not filed within fourteen days of service of the Report and Recommendation), *see also McCall v. Andrus*, 628 F.2d 1185, 1187 (9th Cir. 1980) (failure to object to Magistrate's report waives right to do so on appeal); Advisory Committee Notes to Fed. R. Civ. P. 72 (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir. 1974) (when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation)).

The parties were sent copies of the R&R and instructed that, pursuant to 28 U.S.C. § 636(b)(1), they had 14 days to file written objections. *See also,* Fed. R. Civ. P. 72 (party objecting to the recommended disposition has fourteen (14) days to file specific, written objections). The Plaintiff filed an Objection. The Court has considered the arguments in the Plaintiff's Objection, the Defendant's Response, and the parties' briefs relevant to the objections raised by the Plaintiff.

**OBJECTIONS**

The Plaintiff objects to the finding in the R&R, accepting the ALJ's conclusion that Dr. Etehad's opinion was not consistent and not supported by other medical evidence in the record. Plaintiff submits it was not harmless error for the ALJ to fail to establish whether or not the vocational expert's (VE) opinion was in conflict with the Dictionary of Occupational Titles (DOT). Plaintiff argues the Magistrate Judge erred in finding the ALJ gave clear and convincing reasons for rejecting his testimony as only partially credible. Additionally, the

Plaintiff argues that new evidence presented to the Appeals Counsel further backs-up the credibility of his testimony. In summary, the Plaintiff complains that the R&R picks and chooses evidence from the record to support the ALJ's decision and ignores contrary evidence. He asks that the case be remanded for an award of benefits, or at least, it be remanded for consideration of the new evidence and for a finding regarding any conflict between the VE's testimony and the DOT.

This case was decided at step five of the sequential-decision process because the claimant does not have sufficient Residual Functional Capacity (RFC) to perform his past work, which was very heavy, semi-skilled work such as carpentry, drywall and roofing, due to a severe impairment, endocarditis with valve replacement, cardiomyopathy and brain abscess, in combination with other moderate and slight impairments. At step five, the ALJ concluded the Plaintiff has the RFC to perform "less than sedentary work," (TR 17: Decision at 6), and that jobs exist in significant numbers in the national economy that the Plaintiff can perform. The ALJ denied Plaintiff disability benefits and the Appeals Council affirmed. A timely appeal was made to this Court.

A denial of benefits should only be disturbed if it is not supported by substantial evidence or is based on legal error. *Stout v. Comm'r, Social Sec. Admin.,* 454 F.3d 1050, 1054 (9th Cir.2006); *Thomas v. Barnhart,* 278 F.3d 947, 954 (9th Cir.2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bayliss v. Barnhart,* 427 F.3d 1211, 1214 n. 1 (9th Cir.2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir.2005) (internal quotation marks omitted). The Court reviews the record as a whole, including evidence detracting from the decision as well as evidence supporting the decision. *Robbins v. Social Sec. Admin.,* 466 F.3d 880, 882 (9th Cir.2006); *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir.1999). If the evidence is susceptible to more than one rational interpretation, the one which supports the ALJ's decision prevails. *Thomas,* 278 F.3d at 954 (citing *Morgan v. Comm'r of Social Sec. Admin.,* 169 F.3d 595, 599 (9th Cir.1999)).

**Objections: Dr. Etehad's Opinion; New Evidence, and Plaintiff's credibility**.

"The bottom line is that Plaintiff had infective endocarditis that led to two valve replacements in May 2007. Two years later, his treating cardiologist concisely summarized the Plaintiff's course as follows: Mr. Dahlstrom has limited functional capacity due to stenosis of his prosthetic aortic valve, with a concomitant tricuspid valve prosthesis. He requires ongoing treatment for his congestive heart failure due to valvular heart disease and history of hypertension. (Tr. 277)." (Objection at 4 (citing 3/26/09 Dr Faitelson's assessment), *see also* (TR 260: Dr. Faitelson's notes (describing moderate stenosis in aortic valve with mild stenosis in prosthetic tricuspid valve and trace pulmonic regurgitation/trace tricuspid regurgitation/ trace aortic regurgitation)).

Nine months out from surgery, February 12, 2008, a state-agency physician reviewed Plaintiff's medical information, including state-agency physicians' examination notes from August 24, 2007, (TR 212-215), and functional capacity assessment from October, 2007, (TR 217-225, 227-234), and "found that Plaintiff was expected to recover sufficiently by April, 2008 that he could at least perform work at a sedentary level." (R&R at 4) (citation omitted).

On October 29, 2009, Dr. Etehad saw the Plaintiff and opined that he should not go back to work due to sequelae from his brain abscess and cardiac condition." *Id.* (citing TR 255). Both the ALJ and the Magistrate Judge were unpersuaded by Dr. Etehad's assessment and found it contrary to other medical opinions in the record that the Plaintiff can perform sedentary work. The Court agrees that Dr. Etehad should not be considered a treating physician because, as the Magistrate Judge notes, he only treated the Plaintiff once and did not have an on-going treatment relationship with the Plaintiff. (R&R at 11-13.)

The Court has reviewed Plaintiff's medical records from his treating physicians, Dr. Gonzales, a general practitioner, and Dr. Faitelson, the Plaintiff's cardiologist. The Court finds that the Magistrate Judge accurately summarized the record. Due to intravenous drug use, the Plaintiff suffered abscesses in his brain and bacterial endocarditis (inflamation of the

- 4 -

heart valves), and ultimately received an artificial heart valve replacement in open heart surgery in May, 2007. By June of 2007, his brain abscesses had decreased in size and no new abnormalities were present. The artificial valve was functioning normally, (R&R at 2-3) (citations omitted), but Plaintiff had a limited functional capacity due to the prosthetic heart valve, *supra* (above Dr. Faitelson's 3/26/09 assessment).

The record also clearly reflects that the Plaintiff suffered from chronic pain syndrome, which was generally controlled by medication. (TR 242 (10/22/07 prescription Oxycodon-Acetaminophen), TR 240 (12/12/07 prescription same and Chronic Pain Syndrome diagnosis), TR 272 (2/12/08 same), TR 267 (2/17//09 same )). The ALJ clearly erred in concluding that Plaintiff's reports of "chronic pain" were not supported by the record. (TR 17: Decision at 6.)

Up to February 2009, the Plaintiff was also taking methadone for his heroin addiction. Plaintiff reported that when he stopped taking methadone his pain increased and he was still taking the Oxycodon-Acetaminophen. (TR 267 (Gonzales' notes 2/17/09)). "Methadone is indicated for relief of severe pain, detoxification treatment of narcotic addiction, and temporary maintenance treatment of narcotic addiction." *Methadone: History and Recommendations for Use in Analgesia*, American Pain Society (APS Bulletin, Vo. 10, No. 5, September/October 2000).[1] The ALJ failed to consider the effects on the Plaintiff's chronic pain syndrome from stopping the methadone and whether, thereafter, his pain continued to be moderate and controlled by medication. Instead, the ALJ used the divergence between the Plaintiff's testimony at the hearing, March 27, 2009, and the medical record prior to February 2009 as evidence that the Plaintiff was not credible regarding the degree and pervasiveness of his symptoms. (TR 15: Decision at 4.)

The ALJ also found the Plaintiff's testimony was not credible that if he reads even a few lines it causes his vision to blur, which requires him to take 10 to 15 minutes to refocus his eyes to regain his peripheral vision. (TR 34-35, 36-38.) The ALJ recognized that in

---

[1] Available at http://www.ampainsoc.org/library/bulletin/sep00/upda1.htm.

February 2009, the Plaintiff did report blurred vision and that "he had seen an ophthalmologist who found nothing wrong with his eyes." (TR 16: Decision at 5.) But at the time the ALJ issued the decision, there was no record of any other neurologically related treatment. The ALJ found that even if the allegation of blurred vision was substantiated, there was no evidence to link his blurred vision to his brain abscesses and no evidence that there were additional restrictions on his functional ability above those already considered by the ALJ. (TR 16-17: Decision at 5-6.)

The Plaintiff had an MRI in May, 2009, which he submitted to the Appeals Council, along with a corresponding report written in September 2009 by Dr. Kerendian. As the Magistrate Judge noted, this new evidence establishes that the blurred vision is related to Plaintiff's brain abscess. "The MRI showed 'a parenchymal scar seen in the left occipital pole demarcating the location of his prior hematoma' and 'a second area of gliosis [which] represents old infarction or abscess cavity.' (AR 284.) Gliosis is the proliferation of astocytes (cells supporting neurons and contributing to the blood-brain barrier) in the central nervous system after an injury to the brain. *See* Taber's Cyclopedic Medical Dictionary 189, 886 (Donald Venes et al. eds. 2005, F.A. Davis, Co.). Dr. Kerendian observed 'inferior quadrant opia consistent with the occipital abscess.' (AR 287.) Inferior quadrantopia is blindness or diminished visual acuity in a lower fourth of the visual field. See Taber's , *supra* 1833-34." (R&R at 20 n. 6.) This is a functional limitation beyond that recognized by the ALJ and considered by the VE, which was that "the blurred vision only affects his reading small font type." (TR 43: Hearing Transcript.)

Additionally, the Court rejects the ALJ's conclusion that the Plaintiff's test scores on the academic test administered to him by Dr. Schonbrum are contrary to his testimony regarding blurred vision. He tested at a tenth grade vocabulary and spelling level and a ninth grade math level, but only tested at a fifth grade reading comprehension level. (TR 178: Schonbrun, Ph.D. 3/10/2009 assessment.) Dr. Schonburm reported that the Plaintiff rubbed his eyes frequently and that his reading was slow. The Court finds that the disparity between the reading comprehension score and other scores is consistent with the Plaintiff's

testimony that reading causes blurred vision, and he cannot read and comprehend simple instructions like directions to set up a digital converter box or a gravy recipe. (TR 37-38: Hearing Transcript.)

The Appeals Council should have remanded the case to the ALJ to consider the new evidence linking Plaintiff's claims of blurred vision to his brain abscesses and to consider the Plaintiff's testimony regarding his related limitations, which the ALJ had previously found to not be credible.

## Objection: Conflict between VE and DOT

It is undisputed that an ALJ is required to inquire of a VE on the record as to whether the expert testimony is consistent with the occupational information supplied by the DOT. SSR 00-4p. It is undisputed that the ALJ did not make such an inquiry, but the Defendant asserts the error was harmless because in fact there is no conflict between the VE's testimony and the DOT. Because the Court finds there appears to be a conflict between the VE's testimony and the DOT, the case must be remanded to the ALJ to determine whether the VE's testimony is consistent with the definitions in the DOT and, if not, whether there is a reasonable explanation for any inconsistencies. *Massachi v. Astrue*, 486 F.3d 1149 (2007) (citing SSR 00-4p)).

"The Social Security Administration has taken administrative notice of the [DOT], which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." *Massachi*, 486 F.3d at 1153 n. 8. "In making disability determinations, the Social Security Administration relies primarily on the [DOT] for 'information about the requirements of work in the national economy.'" *Id.* at 1153 (quoting SSR 00-4p at *2). The ALJ may also use testimony from a vocational expert (VE). *Id.* Evidence by a VE should generally be consistent with the DOT, and while neither the DOT nor VE testimony trumps the other when there is a conflict, it is incumbent on the ALJ to identify if a conflict exists and then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. *Id.*

In this case, a VE was necessary because the ALJ found that the Petitioner's functional capacity was sedentary due to severe impairment related to the prosthetic heart valve and was "less than sedentary," (TR 17: Decision at 6, TR 18: Decision at 7), due to additional moderate limitations of pain, miscellaneous heart conditions, occasional diarrhea and blurred vision and a slight limitation due to anxiety. (TR 15: Decision at 4.) The VE testified that, nevertheless, the Plaintiff would be capable of performing the requirements of representative occupations such as a production assembler of which there are 1,071,230 jobs in the national economy.

Plaintiff argues the DOT reflects that every production assembler job in the DOT is characterized as either a light or medium exertional level. Defendant admits, "Production assembly occupations vary greatly, requiring the entire range of physical exceptional levels." (D's Response to Objections at 5.) The Magistrate Judge mistakenly reviewed ONET information instead of the DOT provisions referenced by the Plaintiff. The ONET information does not contain the DOT strength classifications, but is a collaborative comprehensive database system designed to "move beyond the 60-year-old structure of the Dictionary of Occupational Titles (DOT)." ONET (Occupational Information Network):About the ONET Web Site.[2] Because the Magistrate Judge found no conflicting strength information in the ONET, she concluded that the "Plaintiff has failed to demonstrate a conflict between the testimony of the vocational expert and the DOT." (R&R at 14.)

Plaintiff was, however, correct that DOT 706.687-10 Assembler, Production (any industry) specifies a strength level of light, 737.684-034 Production assembler (ordanance) specifies the same, and 809.684-010 Assembler, Production Line (struct. metal) specifies that an assembler-fitter is medium. *DOT*.[3] In its Response to Plaintiff's Objection to the R&R, the Defendant admits as much, but argues there are "some production assembly

---

[2]Available at http://www.occupationalinfo.org/onet/about.html.

[3]Available at http://www.occupationalinfo.org.

- 8 -

occupations [that] require only sedentary exertion, such as: lamp-shade assembler at *DOT* 739.684-094; brush filler at *DOT* 739.687-046; ventilator (wig making) at *DOT* 739.384-022; put-in-beat adjuster (clock and watch making) at *DOT* 715.684-186. *Id.* Sedentary strength requirements differ from light strength requirements.

Sedentary Work is defined as: "exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met. *Id.* at Appendix C: Components of the Definition Trailer, IV Physical Demands- Strength Rating (Strength)..

Light Work is defined as: "exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible." *Id.*

Here, the ALJ found the Plaintiff could lift/carry 10 pounds occasionally, and lift/carry less than 10 pounds frequently, and asked the VE to consider the availability of sedentary work. Given these strength limitations and the moderate additional limitations of pain,

- 9 -

blurred vision, etc., all of which the ALJ concluded were controlled by medication, the VE testified that the Plaintiff could perform production assembler jobs and that 1,071,239 production assembler jobs existed nationally and 647 existed in Arizona. The VE did not limit her testimony to assembler jobs with sedentary strength requirements. Accordingly, it appears there was a conflict between the VE's testimony and the DOT.

While the ALJ stated in his decision that the VE's "testimony is consistent with the information contained in the [DOT]," (TR. 18: Decision at 7), the record, including the ALJ's decision, does not reflect how the ALJ arrived at this determination. As in *Massachi*, the failure by the ALJ to inquire regarding the conflict "could have been harmless, were there no conflict, or if the vocational expert had provided sufficient support for [his] conclusion so as to justify any potential conflicts...Instead, we have an apparent conflict with no basis for the vocational expert's deviation." *Massachi,* 486 F.3d at 1154 n. 19. The administrative regulation, SSR 00-4p, states that the ALJ has "an affirmative responsibility to ask about any possible conflict between the VE...evidence and information provided in the DOT." SSR 00-4p at *4. This requirement is consistent with the Supreme Court's observation that "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits...." *Sims v. Apfel,* 530 U.S. 103, 111 (2000) (citation omitted).

Given the record reflects an actual conflict between the DOT and the VE's testimony and given there is no explanation in the record to resolve the conflict in favor of the VE's position, this Court "cannot determine whether the ALJ properly relied on [the VE's]...testimony." *Massachi,* 486 F.3d at 1154. As a result, this Court cannot determine whether substantial evidence supports the ALJ's finding that the Plaintiff was not disabled under the Act for the relevant time period. *Id.* (remanding for further proceedings).

## CONCLUSION

"Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart,* 379 F.3d 587, 593, (9th Cir. 2004) (*citing*

*Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir. 2000)). Because the record presents a conflict between the DOT and the VE's testimony, and the ALJ did not comply with SSR 00-4p in addressing and resolving this conflict, the Court is unable to determine whether substantial evidence supports the ALJ's conclusion that Plaintiff is not disabled. In the Ninth Circuit, remand for further proceedings is appropriate for such error. *Massachi,* 486 F.3d at 1154. The remand will afford the ALJ an opportunity to reassess the Plaintiff's credibility in light of the new evidence substantiating his claim of blurred vision and take a second look at limitations related to his chronic pain syndrome before making the appropriate inquiries under SSR 00-4p.

After *de novo* review of the issues raised in the Plaintiff's Objection, this Court adopts in part and rejects in part the findings of fact and conclusions of law made by the Magistrate Judge in the R&R. The Court adopts the recommendation to not consider Dr. Etehad as a treating physician and to affirm the ALJ's decision to discount Dr. Etehad's opinion that Plaintiff can not work. The Court rejects the Magistrate Judge's recommendation to affirm the denial of benefits.

**Accordingly,**

**IT IS ORDERED** that after a full and independent review of the record, in respect to the objections, the Magistrate Judge's Report and Recommendation is accepted and adopted in part and rejected in part as the findings of fact and conclusions of law of this Court.

**IT IS FURTHER ORDERED** that the Commissioner's final decision in this matter is REMANDED for further proceedings consistent with this Order. The Clerk of Court is instructed to enter judgment accordingly and close this case.

DATED this 25th day of August, 2011.

David C. Bury
United States District Judge